1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA A. DARNELL,<br><br>                              Plaintiff,<br><br>     vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>                              Defendant. | CASE NO. 12cv708-BEN (WMc)<br><br>**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION AND GRANT DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

   This matter is before the Court on cross-motions for summary judgment. Plaintiff Lisa A. Darnell moves under 42 U.S.C. § 405(g),[1] for judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her

_____

[1] "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . brought in the district court of the United States . . . The court shall have the power to enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ."  42 U.S.C. § 405(g) (2013).

claim for supplemental security income under Title XVI of the Social Security Act.[2] Plaintiff asks the Court to grant her motion for summary judgment, reverse the Commissioner's decision and remand for further administrative proceedings because the Administrative Law Judge ("ALJ") failed to articulate specific and legitimate reasons for rejecting examining psychologist Dr. Vandenburgh's opinion. (ECF No. 16-1 at p. 9). The Commissioner seeks summary judgment affirming the ALJ's decision because, defendant argues, the ALJ's decision was supported by substantial evidence and was free of error. (ECF No. 17-1 at p. 5).[3]

The Court finds the motions appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1).  After careful review of the moving and opposition papers, the administrative record, the facts, and the law, the Court **RECOMMENDS** plaintiff's motion for summary judgment be **DENIED**. The Court also **RECOMMENDS** defendant's cross-motion to affirm the ALJ decision be **GRANTED.**

## PROCEDURAL HISTORY

On September 25, 2009, plaintiff applied for supplemental security income benefits alleging disability beginning March 25, 2009.  *See* Administrative Record ("AR") at 25, 159.[4]  Plaintiff's alleged disability stems from depression, fibromyalgia, anxiety, suicidal thoughts, diabetes, and panic attacks. (AR 187-188). The Commissioner denied plaintiff's application initially and also on reconsideration.  (AR 25). Plaintiff appeared at a hearing before an ALJ. (AR 36-70).  The ALJ found plaintiff ineligible for disability benefits. (AR 25-31). The Appeals Council declined review of the ALJ's decision and thus the ALJ's decision

---

[2] The Administrative Law Judge's ("ALJ") decisions became the final decision of the Commissioner of Social Security when the Appeals Council denied plaintiff's request for review. (AR 1-3).

[3] All pages numbers other than Administrative Record ("AR") page numbers refer to the number assigned by the CM/ECF system.

[4] The AR page numbers cited herein are the numbers located near the bottom right corner of the page.

became the final decision of the Commissioner. (AR 1-6).

Plaintiff then filed the instant complaint pursuant to section 405(g) of the Act in order to obtain judicial review of a "final decision" from the Commissioner denying his claim for supplemental benefits. (ECF No. 1). Defendant filed an answer to the complaint. (ECF No. 11).

Plaintiff now moves for summary judgment to reverse the Commissioner's final decision and remand for further proceedings. (ECF No. 16). Defendant filed a cross-motion for summary judgment and opposition to plaintiff's motion for summary judgment. (ECF No. 17, 18).

**DISCUSSION**

**1.     Legal Standard**

A claimant is entitled to disability benefits if, considering his age, education and work experiences, he is unable to perform the work she previously performed and unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

> The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. **Step one** determines whether the claimant is engaged in "substantial gainful activity." If she is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to **step two**, which determines whether the claimant has a medically severe impairment or combination of impairments. That determination is governed by the "severity regulation" which provides in relevant part:
> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work

activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience.

20 C.F.R. §§ 404.1520 c), 416.920 c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521 (b), 416.921 (b).  Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; [u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting." *Id.*

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.   If the impairment is severe, the evaluation proceeds to the **third step**, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520 (d), 416.920 (d); 20 C.F.R. Part 404, Appendix 1 to Subpart P.  If the impairment meets or exceeds one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the **fourth step**, which determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. §§ 404.1520 (e), 416.920 (e).  If the claimant cannot perform her previous work, the **fifth** and **final step** of the process determines whether she is able to perform other work in the national economy in view of her age, education, and work experience.  The claimant is entitled to disability benefits only if she is not able to perform other work.  20 C.F.R. §§ 404.1520 (f), 416.920 (f).

Section 405(g) of the Act allows unsuccessful applicants to seek judicial

review of a final agency decision of the Commissioner.  42 U.S.C. § 405(g).  The scope of judicial review is limited.  The Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error."  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988) (citing *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions.  *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.1985)).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Even if the reviewing court finds substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  *See Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).  Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social Security Administrator for further proceedings.  *Id.*

**2.    Applicable Law**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *See* 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995, *as amended* April 9, 1996). Generally, the opinions of treating physicians are given greater weight than those of other physicians because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. *See, e.g., Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. *See Lester*, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record).

The ALJ is responsible for resolving ambiguities and inconsistencies in the medical testimony. *Andrews*, 53 F.3d at 1039. Furthermore, determining whether inconsistencies are material, or are in fact inconsistencies at all, is the ALJ's responsibility. *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 603 (9th Cir.1999). The ALJ must offer more than his conclusions and "must set forth his own interpretations and explain why they, rather than the doctors' are correct." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir.1988). Merely stating that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity required. *Id*. at 421. The ALJ must set out a "detailed thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e] findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.    Analysis

The ALJ summarized his consideration of examining psychologist Dr. Kathy Vandenburgh's assessment and findings, and the medical expert Dr. Kent B. Leyton's opinion, as follows:

> From a mental standpoint, I have given significant weight to the opinion of the medical expert. He had the opportunity to review the entire record. His opinion of the claimant's combined mental impairments and limiting functional limits is consistent with the assessment and findings by consulting psychologist Kathy Vandenburgh, Ph.D. who evaluated the claimant in February 2010 (Exhibit 4F).

(AR 30)

The ALJ concluded plaintiff suffered from the following severe impairments: fibromyalgia, diabetes millitus, diabetic neuropathy, obesity, and major depressive disorder versus situational disorder. (AR 27). However, the ALJ concluded plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments because "no physician has opined that the claimant's condition meets or equals any listing, and the state agency program physicians opined that it does not." (AR 27-28). The ALJ found plaintiff had the "residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that he (sic) is mentally limited to simple and repetitive tasks; with no public contact; limited co-worker or supervisory interaction." (AR 28).

Plaintiff contends the ALJ impliedly and impermissibly dismissed Dr. Vandenburgh's opinion; the ALJ found Dr. Vandenburgh's opinion consistent with Dr. Leyton's opinion whereas plaintiff alleges Dr. Vandenburgh found plaintiff more limited than either the ALJ or Dr. Leyton. (ECF No. 16-1, p. 8). Defendant contends the ALJ properly found Dr. Vandenburgh's opinion consistent with Dr. Leyton's opinion. (ECF No. 17-1, p. 4).

In order to determine whether or not the opinions of Drs. Vandenburgh and Leyton are consistent, and whether or not those opinions are consistent with the ALJ's findings, the Court provides the following chart of the disputed findings:

| Dr. Vandenburgh | Dr. Leyton | ALJ |
|---|---|---|
| "Major Depression" (AR 344). | "depression of a moderate nature" (AR 59). | "major depressive disorder versus situational disorder (20 CFR 416.920(c))." (AR 27). |
| "Panic Disorder, with agoraphobia" (AR 344). | "I didn't see much about panic in there" but noting other doctors cited panic disorder and anxiety. (AR 59-61). | Did not make specific findings regarding a panic disorder with agoraphobia but did limit plaintiff to jobs with "no public contact; limited co-worker or supervisory interaction." (AR 28). |
| *Can plaintiff perform simple, repetitive tasks?*<br><br>Yes, but "she would likely have slight/moderate difficulty completing tasks . . . outside of her home with people . . . due to panic disorder with agoraphobia." (AR 345). | *Can plaintiff perform simple, repetitive tasks?*<br><br>Yes. (AR 61-62). | *Can plaintiff perform simple, repetitive tasks?*<br><br>Yes. Findings limited plaintiff to jobs with "no public contact; limited co-worker or supervisory interaction." (AR 28). |
| *Can plaintiff interact with the public (in a work environment)?*<br><br>Yes, but "she would likely have slight/moderate difficulty completing tasks . . . outside of her home with people . . . due to panic disorder with agoraphobia." (AR 345). | *Can plaintiff interact with the public (in a work environment)?*<br><br>"Yes. Although they said, one of the report (sic) said it would be preferable that she was non-public due to her anxiety." (AR 62). | *Can plaintiff interact with the public (in a work environment)?*<br><br>No. Findings limited plaintiff to jobs with "no public contact; limited co-worker or supervisory interaction." (AR 28). |
| *Can plaintiff interact with co-workers and supervisors (in a work environment)?*<br><br>Yes, but "she would likely have slight/moderate difficulty completing tasks . . . outside of her home with people . . . due to panic disorder with agoraphobia." (AR 345). | *Can plaintiff interact with co-workers and supervisors (in a work environment)?*<br><br>"Mild." (AR 62). The Court assumes this means plaintiff would suffer mild impairment interacting with co-workers and supervisors. | *Can plaintiff interact with co-workers and supervisors (in a work environment)?*<br><br>Yes. Findings limited plaintiff to jobs with "no public contact; limited co-worker or supervisory interaction." (AR 28). |

12cv708-BEN (WMc)

1    Based on the chart above, the Court finds facial inconsistencies between the

2    opinions of Drs. Vandenburgh and Leyton. For example, Dr. Vandenburgh found

3    *major depression* and *panic disorder with agoraphobia* whereas Dr. Leyton found

4    *moderate depression* and made no specific finding regarding panic disorder. The

5    ALJ summarily found the two opinions consistent, accorded great weight to the non-

6    examining opinion of Dr. Leyton and did not mention the weight accorded to the

7    examining opinion of Dr. Vandenburgh. The ALJ did, however, place conservative

8    limits on plaintiff's work-environment, including no public contact and limited co-

9    worker and supervisory interaction. (AR 28).

10   The main problem with the ALJ's decision is it failed to explain *why* it found

11   Dr. Vandenburgh's opinion consistent with Dr. Leyton's. The ALJ should have

12   explained its reasoning because the opinions are at least facially inconsistent and

13   "determining whether inconsistencies are material (or are in fact inconsistencies at

14   all)" is the ALJ's responsibility. *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 603

15   (9th Cir. 1999). Further conflating the consistency issue, the ALJ rejected and gave

16   no weight to the opinion of treating physician Philip G. Martin.[5] (AR 29). Dr.

17   Leyton referred to Dr. Martin's opinion during his testimony, stating "in 10F they

18   gave her - - this was Dr. Phil Morton, Martin, he gave her major depression, anxiety,

19   panic with agoraphobia. That's the only - - I didn't see much about panic in there . .

20   ." (AR 59). The ALJ's rejection of Dr. Martin's assessment is problematic because

21   both Dr. Vandenburgh and Dr. Martin found major depression and panic disorder

22

23   [5] The ALJ analyzed the opinion of Dr. Martin but the analysis appears to relate to Dr. Martin's physical assessments. The ALJ found Dr. Martin was only a general practitioner and had no specialized training in neurology or any other area of specialty

24   of concern for the plaintiff. (AR 29). Moreover, to the extent the ALJ rejected the opinions of Drs. Vandenburgh and Rodarte because "no physician has opined that the

25   claimant's condition meets or equals any listing," such a rejection, by itself, fails. Treating physician often do not treat patients with an eye toward assessing potential

26   social security disability claims. Thus, an ALJ should "translate" the treating physician's "opinion into Social Security terms[.]" *See Booth v. Barnhart*, 181 F.Supp.2d 1099,

27   1109 (C.D. Cal. 2002). The issue of the sufficiency of the ALJ's rejection of Dr. Martin's opinion to the extent the ALJ rejected the opinion that plaintiff suffered from

28   major depression and panic disorder with agoraphobia was not raised by plaintiff and is not presently before the Court.

with agoraphobia but, inexplicably, the ALJ rejected Dr. Martin's opinion entirely yet found Dr. Vandenburgh's opinion consistent with Dr. Leyton's opinion and accorded Dr. Leyton's opinion great weight.

Similarly, the ALJ did not provide any analysis regarding the medical assessments of plaintiff's other treating doctor, Dr. Rodarte. Like Dr. Vandenburgh, Dr. Rodarte, found plaintiff suffered from major depressive disorder. (AR 414). Throughout her course of treatment, Dr. Rodarte noted plaintiff was depressed and sometimes suffered from suicidal thoughts. (AR 408-14). Dr. Rodarte changed plaintiff's medications several times in an attempt to treat her condition. *Id*.

The ALJ's ruling provides scant analysis regarding the opinions of  Drs. Rodarte and Vandenburgh even though Dr. Rodarte *treated* plaintiff and Dr. Vandenburgh *examined* plaintiff. In the hierarchy of medical opinions, Dr. Vandenburgh's opinion as an *examining doctor* is entitled to greater weight than Dr. Leyton's opinion as a *non-examining doctor*, and Dr. Rodarte's and Dr. Martin's opinions are entitled to the greatest weight as *treating doctors*.  *Lester*, 81 F.3d at 830. An ALJ can disregard the presumed hierarchy so long as it provides explicit and legitimate reasons supported by substantial evidence in the record. *See Lester*, 81 F.3d at 830-31. Alternatively, an ALJ may rely on a non-examining doctor's opinion as substantial evidence when it is *consistent* with other independent evidence in the record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Despite the scant analysis regarding Dr. Vandenburgh, the Court finds the ALJ *did not* impliedly reject Dr. Vandenburgh's opinion. Indeed, the ALJ's imposed limitations – the limitations by which the ALJ and vocational expert assessed whether or not plaintiff could perform jobs in local and national market – conformed to Dr. Vandenburgh's overall assessment of plaintiff's conditions and capabilities and surpassed the limitations Dr. Vandenburgh recommended. For example, Dr. Vandenburgh opined plaintiff "would likely have slight/moderate difficulty

completing tasks . . . outside of her home with people . . . due to panic disorder with agoraphobia" (AR 345), and the ALJ limited plaintiff to jobs with "no public contact [and] limited co-worker or supervisory interaction." (AR 28). Therefore, the conservative limitations imposed by the ALJ negate the facial inconsistencies between the opinions of Drs. Vandenburgh and Leyton.

Moreover, no expert opined plaintiff's depression or panic disorder constituted a "marked" or "extreme" limitation on plaintiff's ability to function in a work environment. *See* 20 CFR § 416.925 (b)(ii). Plaintiff does not point to any evidence in the record to invalidate or undermine the ALJ's imposed limitations of no public contact and limited co-worker or supervisory interaction. Thus, the ALJ did not fail in his duty to fully and fairly develop the record. *See Lusardi v. Astrue*, No. 08-35712, 2009 WL 3497739, at *2 (9th Cir. 2009). Although the ALJ found the opinions of Drs. Vadenburgh and Leyton consistent even though the doctors used different terms (major depression versus moderate depression), the ALJ's imposed limitations exceeded Dr. Vandenburgh's recommended limitations. Similarly, although the ALJ could have better articulated its reasoning (including the weight he accorded Dr. Vandenburgh's opinion), the ALJ's failure was inconsequential to his ultimate determination. *See Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

Accordingly, the Court **RECOMMENDS** plaintiff's motion be **DENIED** and defendant's motion be **GRANTED**.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, **IT IS HEREBY RECOMMENDED** the Court **DENY** plaintiff's motion for summary judgment and **GRANT** the Commissioner's cross-motion for summary judgment.

**IT IS ORDERED** no later than <u>July 12, 2013</u> any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IT IS FURTHER ORDERED** any reply to the objections shall be filed with the Court and served on all parties no later than <u>July 19, 2013</u>. The parties are advised that failure to file objections within the specified time may result in waiver of the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *see also Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:   June 26, 2013

Hon. William McCurine, Jr.
U.S. Magistrate Judge
U.S. District Court